FILED MAR 18 2019 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---

WILLIAM G. SCHOEPS, JR.,

                                Plaintiff,      17-CV-989-FPG

v.                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
---

## Introduction

Plaintiff William G. Schoeps, Jr. brought this action pursuant to Title II of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 8, 11. For the reasons that follow, plaintiff's motion for judgment on the pleadings (ECF No. 8) is **denied** and the Commissioner's motion (ECF No. 11) is **granted**.

## Background and Procedural History

On February 3, 2014, plaintiff filed an application for disability insurance benefits alleging disability beginning on October 15, 2012. Administrative Record ("AR.") at 193. After the application was denied, he timely requested a hearing. AR. at 139-40. On September 23, 2015, plaintiff testified at a hearing before Administrative Law Judge Hortensia Haaversen ("the ALJ"). AR. at 68-92. A Vocational Expert ("VE") George Starosta also testified at the hearing. The ALJ issued an unfavorable decision on June 2, 2016. AR. at 21-31. Plaintiff then timely requested review by the Appeals Council, which the Council denied on August 4, 2017, making the ALJ's

1

decision the final decision of the Commissioner. AR. at 1-4. Plaintiff subsequently filed this lawsuit.

## **Legal Standard**

The scope of this Court's review of the ALJ's decision denying benefits to plaintiff is limited. It is not the function of the Court to determine *de novo* whether plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

This deferential standard of review does not mean, however, that the Court should simply "rubber stamp" the Commissioner's determination. "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *see also Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). While not every factual conflict in the record need be

explicitly reconciled by the ALJ, "crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). Moreover, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

## Discussion

### A) The ALJ's Decision

At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 15, 2012. AR. at 24. At step two, the ALJ found that plaintiff suffered from several severe impairments: left shoulder impingement and left bicep tendonitis status post surgical decompression and tenodesis, chronic low back pain with left paracentral disc protrusion at L4-L5, and a herniated disc at L4-L5. *Id.* At step three of the analysis, the ALJ found that the severity of plaintiff's impairments did not meet or equal the criteria of any listing. AR. at 24-25. The ALJ then determined that plaintiff retained the residual functioning capacity ("RFC") to perform light work with several physical limitations. Specifically, she found that plaintiff can occasionally climb ramps, stairs, ladders, ropes, scaffolds; occasionally stoop, crouch, and reach overhead with the left upper extremity with

3

no limitations on the right. AR. at 25. At step four, the ALJ found that plaintiff cannot perform any past relevant work. The ALJ then proceeded to step five, where she determined that there are jobs in the national economy that a person of plaintiff's age, education and work experience could perform. AR. at 30-31. Specifically, the ALJ determined that plaintiff can perform work as a storage facility rental clerk and sales attendant. *Id.*

**B) Analysis**

Plaintiff argues that the RFC determination was not supported by substantial evidence because the ALJ failed to afford appropriate weight to opinions of plaintiff's treating physicians, discounted other medical opinions in the record without providing good reasons, and failed to consider plaintiff's back and knee pain in his RFC determination. *See* Pl.'s Br. 9 (ECF No. 8-1). This Court disagrees.

The treating physician rule established in our circuit provides that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see also* 20 C.F.R. § 416.927(d)(2)("Generally, we give more weight to opinions from your treating sources."). The ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our . . . decision for the weight we give [the claimant's] treating source's opinion."). Where the ALJ gives a treating physician opinion something less than "controlling weight," she must provide good reasons for doing so. Courts of our circuit have consistently opined that the ALJ's failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician could be a ground for remand. *See Schaal v. Apfel*, 134 F.3d 496, 503-05 (2d Cir. 1998);

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). However, remand for consideration of an improperly excluded opinion of a treating physician is not necessary when its review would not lead to a different conclusion. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

In the instant case, plaintiff takes issue with the ALJ's assigning significant weight to two opinions in the record – opinion of plaintiff's orthopedic surgeon Dr. Goldblatt, and evaluation of an independent medical examiner Dr. Nicholas - arguing that both opinions were stale and failed to consider plaintiff's allegations of back and knee pain. Pl.'s Br. 13. As an initial matter, the mere passage of time does not render an opinion stale, unless it fails to recognize evidence of deterioration of a claimant's condition. *Whilehurst v. Berryhill*, 1:16-cv-01005-MAT, 2018 WL3868721, *4 (W.D.N.Y. Aug. 14, 2018) ("[A] medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated."); *Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965(MAT), 2018 WL 3628253, *6 (W.D.N.Y. July 31, 2018) ("A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition."); *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("A medical opinion may be stale if it does not account for the claimant's deteriorating condition.").

Here, plaintiff was referred to Dr. Goldblatt by his primary treating physician Dr. Stefanos in September 2012 to repair plaintiff's left shoulder injury suffered as a result of a motor vehicle accident. AR. at 312. A month later, Dr. Goldblatt operated on plaintiff to repair his left shoulder impingement and bicep tendonitis – impairments which plaintiff sought disability for and which were recognized by the ALJ as severe. Dr. Goldblatt also treated plaintiff for several months

subsequently to the surgery.[1] AR. at 113, 314-39; *see* 20 C.F.R. § 404.1527 (c). Similarly to Dr. Goldblatt, Dr. Nicolas examined plaintiff and reviewed his medical records relevant to shoulder surgery performed by Dr. Goldblatt. AR. at 363. Therefore, it is justifiable that neither Dr. Goldblatt, nor Dr. Nicolas addressed plaintiff's alleged knee and back issues in their opinions, especially considering that plaintiff had not started to experience knee pain a year later until 2015. AR. at 396-04. This Court recognizes that the ALJ generally cannot "rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2013), *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("[C]onsultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day."). However, when the opinion of a consultative examiner is supported by substantial evidence and consistent with the other evidence in the record, the ALJ is free to afford significant weight to it. *See Abarzua v. Berryhill*, No. 18-640-CV, 2019 WL 978658, at *2 (2d Cir. Feb. 27, 2019)(summary order)(the ALJ property based his decision on reports of consulting examiners, who relied on medical evidence in rendering their opinions and whose findings addressed plaintiff's condition); *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016) (summary order) (the ALJ property afforded great weight to the opinion of the consulting psychologist because it was consistent with other medical evidence and was supported by substantial evidence); *Mongeur*, 722 F.2d at 1039 (2d Cir. 1983) ("the report of a consultative physician may constitute [substantial] evidence")(internal citation omitted); *Rosier v. Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014) (summary order) (the ALJ afforded significant weight to a more detailed assessment of a consultative examiner because it was consistent with the medical evidence

---

[1] The record contains treatment notes prepared by Linda J. Smith, a physician assistant at Dr. Goldblatt's office, who, in addition to Dr. Goldblatt, treated plaintiff following his shoulder surgery. AR. at 335, 337-38. While not an acceptable medical source, conclusions by PA Smith were consistent with the ALJ's RFC determination.

and covered a longer time frame). Here, even though Dr. Nicolas did not have a preexisting doctor-patient relationship with plaintiff, he relied on plaintiff's medical records in rendering his opinion regarding plaintiff's limitations in the use of his left shoulder, and his opinion was consistent with the record as a whole.

This Court finds that the ALJ properly relied on the findings of both physicians, as well as the other medical opinions, to limit plaintiff to light work[2] with only occasional reaching overhead with his left upper extremity and occasional crouching, stooping, and climbing. Specifically, two months after plaintiff's shoulder surgery, Dr. Goldblatt opined that plaintiff would be able to return to work without restriction on March 7, 2013. AR. at 334-35. This opinion was Dr. Goldbaltt's projection of improvement of plaintiff's range of motion, which he based on the progress plaintiff had made in physical therapy after the surgery. AR. at 331-38. Plaintiff resumed work as was prescribed by Dr. Goldblatt[3], however, as eventually determined, his shoulder never fully recovered its range of motion, leaving plaintiff with some discomfort, decreased abduction, forward elevation and internal rotation of the shoulder.[4] AR. at 338. Dr. Nicholas confirmed the restriction of movement in plaintiff's left shoulder, opined that it was permanent, and that plaintiff had "reached an end result on orthopedic treatment." AR. at 365. Notably, Dr. Nicolas did not recommend further surgical treatment and ultimately determined that plaintiff was limited to lifting 20 pounds. *Id.* Plaintiff's primary care physician Dr. Stefanos also opined that prognosis of plaintiff's shoulder injury was poor, and that he was moderately limited in pushing, pulling,

---

[2] The regulations define "light work" as work that involves lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567 (b). It may include a good deal of walking, standing or sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*

[3] Plaintiff attempted to return to work on March 7, 2013 as prescribed by Dr. Goldblatt, but due to the lack of work provided by his employer he resumed work a month later in April 2013. AR. at 337.

[4] Despite his therapist's recommendation, plaintiff stopped attending physical therapy in April 2013 due to its cost. AR. at 338. He was shown stretching exercises that he could do on his own. Id.

climbing, and using stairs. AR. at 373-74. Similarly, consultative examiner Dr. Toor determined that plaintiff had limited range of motion in his shoulder and that he was moderately limited in reaching with it. AR. at 370.

The Court disagrees with plaintiff's contention that the ALJ failed to consider plaintiff's back and knee pain in her RFC determination. Pl.'s Br. 13. While the Court acknowledges that plaintiff's low back problems dated back to 2009, the record, nonetheless, contains sufficient medical and non-medical evidence, including evidence of plaintiff's work and daily activities, that support the ALJ's conclusion that plaintiff's physical limitations associated with back and knee pain, while expected to cause the alleged symptoms, did not warrant a finding of disability. For instance, Dr. Stefanos opined that prognosis of plaintiff's lumbar disease was fair. AR. at 373-74. Dr. Toor observed that even though plaintiff had a restricted range of motion of his lumbar spine and left shoulder, he was not in acute distress, did not use assistive devise, his gait and stance were normal, and he was able to rise from chair without difficulty.[5] AR. at 369-70. As to plaintiff's knee pain, in August 2015, Dr. Hoffman noted that plaintiff had bilateral chronic knee pain, but opined that his ligament stability in both knees was intact, had no point tenderness, and plaintiff only had minimal discomfort on range of motion in his left knee. AR. at 400. Interestingly, plaintiff did not mention his lower back pain as his chief complaint during the visit, and only complained about his knee pain that was caused by "work[ing] long hours on concrete floors and squatting frequently." AR. at 339. Based on x-ray images of plaintiff's knees, Dr. Hoffman determined that there were no arthritic changes or inflammatory conditions in plaintiff's knees.

---

[5] The Court is not relying on Dr. Toor's findings regarding plaintiff's ability to change for exam and get on and off the examination table because they were internally inconsistent. His treatment notes state that plaintiff had difficulties changing and getting on an off the examination table, and that plaintiff "need[ed] no help changing for exam or getting on and off exam table." AR. at 369.

8

AR. at 397-98. Similarly to examination by Dr. Hoffman, plaintiff's chief complaint during the examination by Dr. Gabel was plaintiff's bilateral knee pain and not his back pain. AR. at 423. During the exam, Dr. Gabel observed reduced range of motion in plaintiff's knees and opined that plaintiff would be limited in the amount of lifting, carrying, and squatting he could do. *Id.*

The Court also does not find an error in the ALJ assigning limited weight to the opinions of Dr. Stefanos. As previously discussed, the opinion of a treating source as to the nature and severity of a claimant's impairment is entitled to controlling weight only when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" contained in the record. *See* 20 C.F.R. § 416.927 (c)(2); *Halloran*, 362 F.3d at 32 ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); *Rosier*, 586 F. App'x at 758 (the ALJ properly assigned less than controlling weight to a treating source opinion because it was inconsistent with other medical opinion evidence in the record, plaintiff's daily activities, evaluation of consultative examiner, and treatment notes from other doctors); *Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (summary order) (the ALJ properly afforded less than controlling weight to a treating source opinion because it was inconsistent with the doctor's own treatment notes and the opinion of a consultative examiner). The ALJ also may accept portions of a treating physician's report while declining to accept other portions of the same report. *See Pavia v. Colvin*, No. 6:14-cv-0679 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d. Cir. 2002)). Here, the ALJ was free to afford limited weight to opinions of Dr. Stefanos in which he determined

that plaintiff was unable to work (May 2014 opinion), and which limited plaintiff to working four hours per day (July 2015 opinion) because conclusions regarding plaintiff's employability contained in both reports were essentially opinions on dispositive issues that are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527 (d) (3) (opinions on issues that are dispositive of a case, including opinions of claimant's treating sources on claimant's RFC, are reserved to the Commissioner); *Freeman v. Comm'r of Soc. Sec.*, No. 7:11-cv-1276(GLS), 2012 WL 2374726, at *3 (N.D.N.Y. June 22, 2012) (opinions from treating sources that plaintiff could only work part-time were not medical opinions, but are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case"). Additionally, Dr. Stefanos' May 2014 opinion about plaintiff's complete inability to work was internally inconsistent with his own findings of plaintiff's functional limitations and his opinion that plaintiff was not limited in walking, standing, or sitting, but was moderately limited in pushing, pulling, bending, using stairs, or climbing. *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) ("A physician's opinions are given less weight when his opinions are internally inconsistent.") (citing *Michels v. Astrue*, 297 F. App'x 74, 75 (2d Cir. 2008) (summary order)).

Even though the ALJ assigned limited weight to Dr. Stefanos' May 2014 opinion, she, nonetheless, fully incorporated physical limitations that he assigned to plaintiff in her RFC determination finding that plaintiff could only occasionally stoop, crouch, climb and reach overheard with his left extremity. AR. at 25. As far as the July 2015 opinion, the Court finds that it was inconsistent with treatment notes of Dr. Hoffman, Dr. Gabel, and with plaintiff's testimony regarding his physical abilities and work history during pendency of this appeal. AR. at 55, 64-66. Notably, the ALJ can consider claimant's work history as one of many factors to weigh the credibility of the claimant's allegations as to the severity of impairments. *Schaal v. Apfel*, 134

10

F.3d 496, 502 (2d Cir. 1998) ("[W]ork history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony."). However, courts of this circuit have warned that such considerations should be made carefully without holding the claimant's employment against him. *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)("When a disabled person chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working."); *cf. Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("a claimant need not be an invalid to be found disabled"); *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 41 n.6 (2d Cir. 1972) ("To receive benefits . . . one need not be completely helpless or unable to function. . . ."). Because questions of credibility appraisal of witnesses, including the claimant, as to the severity of his impairments are left to the ALJ and not the reviewing courts, *see* 20 C.F.R § 416.929 (c)(3) and *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984), this Court does not find an error in the ALJ's consideration of the nature of plaintiff's employment during this appeal, as well as her consideration of other factors such as plaintiff's poor compliance with physical therapy, refusal of injection treatment and over-the-counter medication to treat his back pain, and his activities of daily living. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (no error in the ALJ's credibility assessment when the ALJ relied on testimony and treatment notes from plaintiff's physicians stating that plaintiff could perform light duty work, as well as plaintiff's own account of his activities of daily living); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (plaintiff's complaints of pain were not supported by his activities of daily living, caring for his one-year-old child, vacuuming, washing dishes, occasional driving, watching television, reading and using computer); *Tavarez v. Barnhart*, No. 05 Civ. 2747(DLC), 2006 WL 997701, at *5 (S.D.N.Y. Apr. 17, 2006) (claimant's failure to

attend follow-up consultations, the lack of supplementary documentation of her psychiatric treatment, and her use of only over-the-counter medication to treat her pain were important factors in evaluating the credibility of a claimant's subjective complaints); *Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184-FPG, 2014 WL 7359027, at *19 (W.D.N.Y. Dec. 23, 2014) (the ALJ properly made credibility determination of the severity of plaintiff's alleged impairments based on several factors that included plaintiff's work activity since the onset date and his noncompliance with medical recommendations).

## Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (ECF No. 8) is **denied** and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is **granted**. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

Dated: March 8, 2019
Rochester, New York